IN THE MATTER OF THE PETITION OF RUSSELL W. ADAMS AND OTHERS TO VACATE AN ASSESSMENT, ETC.*

*Vacating assessments in Brooklyn — chap. 663 of 1875 — chap. 169 of 1861.*

Since the passage of section 13 of chapter 663 of 1875, in relation to vacating assessments in the city of Brooklyn, the provisions of section 5 of chapter 169 of 1861, directing that "no assessments on any piece or parcel of land shall exceed in amount one-half of the value thereof," is no longer in force, so as to justify the reduction of an assessment in accordance therewith.

APPEAL from an order made at the Special Term reducing assessments on plaintiffs' lots. The plaintiffs applied to have assessments upon certain lots in the city of Brooklyn owned by them reduced and vacated. Upon the hearing the justice decided as follows:

"The assessment against lands of Jane Hoffman and Helena Rogers, between Dean and Bergen streets, should be vacated.

"The item for extra work in changing the grade from Sackett street to the city line, amounting to $4,195.20, should be deducted from the gross amount of the assessment, together with interest, collectors and assessors' fees thereon.

"I find from the proofs that the actual amount of benefit accruing from said improvement is to the extent of seventy-eight and one-third per cent of the prices charged, allowed and assessed, and the assessment is sustained to that extent and vacated as to the balance, the same having been increased to that extent by irregularities.

"I also further find that upon those lots where the assessment exceeds in amount one-half of the assessed value that the amount of such excess is an irregularity, and to that extent should be vacated, it appearing in these cases that the actual fair value of the improvement does not exceed one-half of the assessed value of said lots."

*Edward B. Merrill,* for the petitioner.

*Wm. C. De Witt,* corporation counsel.

* See Matter of Mead, *ante* 349,

DYKMAN, J. :

The assistance of the legislature, in relation to assessments for the opening of streets and avenues, has been frequently invoked in behalf of the city of Brooklyn, and the great object of all such legislation has been to devise a plan by which, on the one hand, the party assessed should not be obliged to bear any burden of taxation imposed upon him by official corruption or improvidence, and on the other, the portion of the city which had already borne the expense of its own local improvement should not be compelled by mere technical defects to pay the expense of an improvement in the new portion of the city also.

The first steps towards this consummation was made by the enactment in the law of 1861, that no assessment on any parcel of land should exceed in amount one half of the value thereof. (Chap. 169, Laws 1861, § 5.) This provision, however, was entirely in the interest of the landholder and left the expense of improvements beyond the one-half of the land assessed therefor to fall on the city at large. As a remedy for this evil, chapter 483 of the law of 1871 was enacted, and was re-enacted by section 38 of title 18 of chapter 863 of the Laws of 1873, which last law is the amended charter of the city of Brooklyn. This section provided that "whenever any irregularity or fraud shall be shown in any such assessment proceedings, whereby the expense of any local improvement has been increased, the court shall thereby only have authority to reduce the assessment by as much as it has been increased by such fraud or irregularity." This enactment was intended as a step in the other direction in the interest of the city. It was soon found to fall far short of the object for which it was intended, for the courts were obliged to hold, that where the irregularity was jurisdictional the increase referred to covered the whole amount involved, and so the whole assessment might, under this statute be entirely swept aside for the merest irregularity, and the whole expense of the improvement be thrown upon the city at large. This was the state of the law when section 13 of chapter 633 of the Laws of 1875, amending section 30 of chapter 863 of 1873, was enacted as follows : "None of the provisions of any act of the legislature of this State shall enable or permit any court to vacate or reduce any assessment, in fact or

apparent, whether void or voidable on any property for any local improvement in the city of Brooklyn, otherwise than to reduce any such assessment to the extent the same may have been in fact increased in dollars and cents by reason of fraud or irregularity, and in no event shall that proportion of any such assessment which is equivalent to the fair value of any actual local improvement be thereby disturbed." Thus, in plain and unequivocal language is accomplished what the legislature has had steadily in view, since its first enactment in 1861. We have been called upon for a construction of this statute at the present term of the court in the Matter of the Petition of Mead, and have held that by it the legislature intended to limit the power of the court to that portion of any assessment which might be the product of fraud or extravagance, and that the statutory remedy by petition against void or voidable assessments in the city of Brooklyn is now confined to that portion of any such assessment, which is in excess of the fair value of the work actually done and material actually furnished, and is consequently the result of fraud or extravagance. That the jurisdiction and power of the court is limited to that portion of an assessment void or voidable, which is in excess of the value of the work done and material furnished, and that, inasmuch as the excess beyond the fair value of the improvement is the only subject-matter for the exercise of the remedy by petition it rests with the petitioner to show the existence of such amount.

Now in this proceeding, under appropriate allegation for that purpose in the petition, testimony has been taken on both sides in respect to the value of the work done, and a finding has been made by the court which is not very intelligible in the light of the facts disclosed by the appeal book. The decision is, that the whole assessment against the lands of Jane Hoffman and Helena Rogers, between Dean and Bergen streets should be vacated. No reason is disclosed for this sweeping vacation and none can be gathered from the papers. It is plainly at war with the statute of 1875, if not with that of 1861.

The next clause in the decision is, that the items for extra work in changing the grade from Sackett street to the city line, amounting to $4,195.20 should be deducted from the gross amount of the assessment, together with interest and collectors and assessors' fees

thereon. Here there is a deduction from the assessment in dollars and cents without any decision or finding that it has been increased by fraud or irregularity, or that it is in excess of the fair value of the work actually done : even if there was fraud or corruption that proportion of the assessment which is equivalent to the fair value of the work actually done can, in no event, be disturbed thereby.

Then there is a finding that the actual amount of benefit accruing from the improvement, is to the extent of seventy-eight and one-third per cent of the prices charged, and the assessment is sustained to that extent, and vacated as to the balance, the same having been increased to that extent by irregularities.

Under none of the statutes mentioned above has the benefit accruing from any improvement been given any influence whatever in determining the validity of any assessment. Under the statute of 1861 no assessment could exceed one-half of the value of the land assessed, and under the statute of 1875, as we have seen, the text is ignored, and the excess above the fair value of the work made the only subject for the action of the court. Neither can an assessment be increased by statutory irregularities. Fraud or irregularity is made by the State the foundation of the jurisdiction of the court in these proceedings, but the assessment can only be reduced by reason of corruption or extravagance.

It is further found, that upon those lots where the assessment exceeds in amount one-half of the assessed value, the amount of such excess is an irregularity and to that extent should be vacated, it appearing in these cases that the actual fair value of the improvement does not exceed one-half of the assessed value of said lots. The finding that the assessment in excess of the one-half of the assessed value of the lots is an irregularity is under and in obedience to the law of 1861, which, as we have seen, is no longer controlling. The last part of the finding looks as though it was intended to conform to the statute of 1875, but it is really a recital of what appears rather than a finding of fact, and it is impossible to gather the fact from the papers on appeal.

We think, therefore, the court has subordinated its actions to the rule established by the law of 1861 in the disposition of this case, and has not yielded to the statute of 1875 the control which it must have.

The court below may have refused obedience to the statute of 1875 by reason of the constitutional objection, that the powers of the court possessed under the law of 1862 cannot be abridged by a charter act. We have examined that question in Mead's case and find no embarrassment in it at all. The powers of this court to vacate assessments in the city of Brooklyn, by summary orders on petition of the parties aggrieved was first given by chapter 63 of the Laws of 1862, above mentioned. That was a charter act, and by it the provision of the act entitled "An act in relation to frauds in assessments for local improvements in the city of New York, passed April 17, 1858, were extended and made applicable to the city of Brooklyn and to the proceedings relative to any assessment for the local improvement therein.

The same law was adopted in the act to amend the charter of the city of Brooklyn in 1873, which was also a charter act, so that all the jurisdiction over the subject which is possessed by the court comes through charter acts, and it was certainly competent for the legislature to amend the charter of the city in the way it has done by the charter act of 1875.

The order appealed from must be reversed with costs and disbursements.

BARNARD, P. J., concurred ; GILBERT, J., did not sit.

Order reversed with costs and disbursements.